An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-951

Filed 1 July 2026

Mecklenburg County, No. 19 CR 217630-590

STATE OF NORTH CAROLINA

v.

DANIN NOUANTHANUVANH, Defendant.

Appeal by Defendant from judgment entered 2 August 2024 by Judge Jacqueline D. Grant in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 May 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Llogan R. Walters, for the State.*

*Randolph & Fischer, by Attorney J. Clark Fischer, for Defendant–Appellant.*

MURRY, Judge.

Danin Nouanthanuvanh (Defendant) appeals his jury conviction on one count of felony embezzlement. *See* N.C.G.S. § 14-90 (2025). He argues that the trial court erred (1) by denying his motion to dismiss for failure to show a fiduciary relationship with the Wat Prazanimith Meditation Center (Temple), a Buddhist worship center in Charlotte, N.C., and (2) by overruling his objection to the State's introduction of

evidence regarding certain unrelated corporate transactions. For the reasons below, this Court holds that the trial court did not err on the first count but did harmlessly err on the second.

## I.    Background

At some point in 2013, Defendant began serving as vice chairman of the Temple's Board of Directors in Charlotte, N.C. He served in this formal position until late 2018. Alongside his vice chairmanship, the Temple informally appointed Defendant as the primary officer "in charge of finances" because the official Treasurer was merely "a placeholder for the title." In this latter capacity, he opened up a "trust account" which would hold accumulated funds intended for the "long-term plans" of Temple expansion. Over the next five years, he held himself out to multiple congregants as the officer responsible for "helping the Temple acquire property to build a new" worship building. After giving "reasons after reasons" why he had yet to purchase any new property towards this purpose, a longtime congregant found the trust account's bank statements in 2018. These statements systematically documented multiyear transfers in a total excess of $100,000 to the accounts of at least three now-defunct incorporated entities owned (at least in part) by Defendant: Tough Guy Flooring, Dan's Handyman Service, and NYZ Management Services (NYZ). After the congregant handed these documents over to the authorities, a grand jury indicted Defendant on one count of felony embezzlement on 10 May 2019. The matter came on for trial on 29 July 2024.

At trial, the State adduced both the relevant bank statements and the N.C. Secretary of State records that documented the entities' respective closures. Defendant eventually took the stand in his own defense. On cross-examination, the State inquired as to his "role with NYZ" and its incorporated purpose. Defendant explained that he and his "business partner[ ] convinced two UNC students to provide [them] with $300,000" through NYZ as a funding mechanism to "start their L-1 visas, their H-1B visas . . . and . . . their F-1 visas." (Brackets omitted.) When Defendant confirmed this purpose, the State characterized the transaction as he and his "partner defraud[ing] those two students." Defendant denied "defraud[ing] them" but admitted to "breach[ing] the contract" they jointly executed. He also objected to this particular line of questioning, which the trial court promptly overruled. After the jury found him guilty of the embezzlement charge, the trial court sentenced Defendant to 60–84 months of imprisonment and ordered him to pay $298,576 in restitution. Defendant timely appealed.

## II.    Jurisdiction

This Court has jurisdiction over Defendant's appeal from the trial court's final judgment under N.C.G.S. §§ 7A-27, 15A-1444. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pleaded not guilty but found guilty).

## III.    Analysis

Defendant argues on appeal that the trial court reversibly erred (1) by denying his motion to dismiss the State's embezzlement charge for lack of substantial

evidence and (2) by overruling his objection to the admission of purportedly prejudicial evidence under N.C. Evidence Rule 404(b). N.C. R. Evid. 404(b) [hereinafter Rule]. Having reviewed these questions of law *de novo*, we disagree and hold that the trial court did not err on the first count and did not prejudicially err on the second. *See State v. Keyes*, 64 N.C. App. 529, 531 (1983) (reviewing motion to dismiss for evidentiary insufficiency); *State v. Beckelheimer*, 366 N.C. 127, 130 (2012) (reviewing Rule 404(b) applicability).

## A. Fiduciary Relationship

First, Defendant argues that the trial court erred by denying his motion to dismiss the embezzlement charge because the State "failed to establish . . . [his] fiduciary relationship with" the Temple. To withstand a motion to dismiss on this ground, the State must adduce "substantial evidence of each essential element of the charged offense." *State v. Rupe*, 109 N.C. App. 601, 607 (1993). Because the State adduced enough evidence "that a reasonable mind would accept to conclu[de]" that Defendant had this fiduciary relationship, we disagree and hold that the trial court did not so err. *Id.* (ellipses omitted).

To prove criminal embezzlement at trial, the State must "present proof of the following essential elements" that a defendant in relevant part:

(1)  Acted as a fiduciary for his principal;
(2)  Received money of his principal in the course of his employment and by virtue of his fiduciary relationship; and
(3)  Fraudulently or knowingly misapplied or converted to his own use

such money which he had received in his fiduciary capacity.

*Id.* at 608 (citation modified) (quoting N.C.G.S. § 14-90). A defendant forms a fiduciary relationship with a principal who "places a special confidence in him" to such a degree that he incurs "a duty . . . to act primarily for [the principal]'s benefit." *Id.* (citing *State v. Seay*, 44 N.C. App. 301, 307 (1979)). And much like "with the term *fraud*," we tend to broadly define *fiduciary* "for fear one may escape the consequences of his actions for failure to meet a technical definition." *Seay*, 44 N.C. App. at 307 (italics added). "[T]h[is] relationship can arise in a variety of circumstances and may stem from varied and unpredictable factors." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588 (1991) (citation omitted).

Although a slightly different fact pattern, our decision in *State v. Grandy*, 261 N.C. App. 691 (2018), informs in principle the outcome here. In *Grandy*, a university's endowment fund (Foundation) employed the defendant as its Director of Accounting. *Id.* at 691. Over the course of several years, the defendant transferred over $400,000 from the Foundation's account to her personal checking account (and admitted as much to law enforcement upon discovery). *Id.* at 692. After her embezzlement conviction at trial, she argued on appeal that her permissionless theft of the funds did not meet N.C.G.S. § 14-90's elements. *Id.* We rejected this argument, reasoning that the defendant owed the Foundation a fiduciary obligation because it "*entrusted* her with both its funds and both key fobs" necessary to transfer the funds regardless of whether it "intended otherwise." *Id.* at 694 (citing *State v. Weaver*, 359 N.C. 246,

256 (2005)). Defendant similarly acknowledges on appeal that the Temple's "head abbot trusted [him] to help with [T]emple finances and bank accounts."

And much like the *Grandy* defendant, Defendant here unconvincingly attempts to couch his conviction within the fact pattern of *State v. Weaver*. In *Weaver*, the defendant owned a plastics-injection corporation that employed his wife as a receptionist. 359 N.C. at 248. Another employee sought to train the wife as the next corporate accounting manager. *Id.* As part of this training, the wife could transfer money between personal and professional accounts only by "us[ing a] signature stamp . . . kept in a desk drawer in [the other employee's] office." *Id.* After misappropriating $450,000 in corporate funds through the illicit use of this third-party stamp, a grand jury indicted her defendant husband for multiple counts of embezzlement.[1] *Id.* at 249–50. On appeal, our Supreme Court reversed the defendant's convictions solely because neither he nor his wife "[ ]ever lawfully possessed the misappropriated funds, initially or otherwise," *id.* at 258—an "essential element of the charged" embezzlement entirely inapposite to Defendant's claims before us now, *Rupe*, 109 N.C. App. at 607.

We need not determine whether Defendant served as a treasurer-in-fact to hold that he violated his fiduciary duty to the Temple. Instead, we can look to his admissions at trial that belie his statutory duty owed as the Temple board's vice

---

[1]  The *State v. Weaver*, 359 N.C. 246 (2005), opinion does not indicate why the wife remained uncharged.

chairman. *See* N.C.G.S. Ann. § 55-8-30 N.C. cmt., at 504 (LexisNexis 2025) ("Although the word 'fiduciary' is no longer used [to] describ[e] the duty owed by a director to a corporation, there is no intent to change North Carolina law in this area."); *accord id.* § 32-2(a) ("'Fiduciary' includes a trustee under any . . . expressed[ or] implied . . . officer of a corporation . . . ."). Defendant confirmed this position on the stand in his own defense. Even though "neither Dan's Handyman Service nor Tough Guy Flooring had worked in the past [ten] years," he still incrementally transferred up to $100,000 to the latter's bank account as late as 2017. The State also showed bank statements indicating Defendant as the only signatory of the Temple bank account from which these transfers originated. And Defendant's promise to "repay the property embezzled is no[ ] . . . defense to prosecution." *Rupe*, 109 N.C. App. at 609. Any "reasonable mind" could (and likely would) infer a violated fiduciary duty from these facts. *Id.* at 607. Thus, we hold that the trial court did not err in denying Defendant's motion to dismiss the embezzlement charge for lack of sufficient evidence.

## B. Evidence Admission

Second, Defendant argues that the trial court prejudicially erred by overruling his objection to the admission of evidence detailing his "other bad acts" under Rule 404(b). Although we recognize that the trial court erred by admitting this possible evidence of unrelated fraud, we believe that the overwhelming evidence of Defendant's fraud precludes any resulting prejudice. *See, e.g., State v. Morgan*, 315

N.C. 626, 640 (1986) (holding harmless error "in light of the other evidence admitted at trial"). Thus, we hold that the trial court harmlessly erred in overruling the objection.

Under Rule 404, the trial court must decide as a threshold matter of law whether to admit "[e]vidence of other crimes, wrongs, or acts" committed by a criminal defendant. Rule 404(b). Only if the State seeks to "admi[t it] for other purposes" beyond "pro[of of] the character" of that defendant may the trial court do so. *Id.* But under Rule 403, it may discretionarily exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403. We review the former "legal conclusion" *de novo* but review the latter only "for [an] abuse of discretion." *Beckelheimer*, 366 N.C. at 130 (distinguishing two Rules). Although the record does not indicate "under which Rule the trial court overruled" Defendant's objection, *Morgan*, 315 N.C. at 633, he characterizes Rule 404(b) as "the only theoretical basis for admission" on appeal. Because Defendant provides "no reason or argument" on appeal regarding which alternative Rule the trial court may have disregarded by its ruling, we assess his claim only against the backdrop of Rule 404(b). N.C. R. App. 28(b)(6) ("Issues not presented in a party's brief . . . will be taken as abandoned.")

We have distilled three core factors that the trial court must consider to properly admit evidence of a defendant's "other . . . acts," Rule 404(b):

(1)   The relevant evidence thereof must have probative value beyond

showing the defendant has the propensity to commit an offense of the nature of the crime charged;

(2)  The past act must be similar enough to the charged crime to distinguish it from any generalized commission of the crime; and

(3)  The past act must be temporally proximate to the presently charged act.

*State v. Jones*, 288 N.C. 175, 181 (2023) (citation modified; quotation omitted). Defendant here challenges only the trial court's implicit consideration of the first factor that requires the evidence's "exclusion if its only probative value is to show . . . the propensity or disposition to commit [the] offense . . . charged." (Quoting *State v. Coffey*, 326 N.C. 268, 278 (1990).)

Contrary to the State's argument on appeal, the cross-examination of Defendant about his recent transactions through NYZ did not clearly speak to his "requisite state of mind" regarding his unrelated embezzlement of the Temple. True enough, Defendant transferred a certain amount of money from the latter's bank account to the former's. But by Defendant's own admission, he incorporated NYZ as an unrelated investment opportunity for "two UNC students." When the prosecution immediately characterized NYZ's collapse as Defendant having "defrauded" them, he characterized it as a mere "breach[ of] contract" only pursuable in civil court.

Although the trial court erroneously overruled Defendant's objection to this colloquy, its decision does not implicate "a reasonable possibility that . . . a different result would have been reached at the trial" absent "this error in question." *Morgan*, 315 N.C. at 640 (quoting N.C.G.S. § 15A-1443(a)). The jury could reasonably infer

beyond a reasonable doubt Defendant's "intent to willfully . . . misapply" the Temple's cash "for purposes other than those for which . . . [he] received it" from the facts already discussed above. *Rupe*, 109 N.C. App. at 609. Thus, we hold that the trial court harmlessly erred by overruling Defendant's objection on this point. *Accord State v. Ligon*, 332 N.C. 224, 243 (1992) ("Although defendant may not have received a 'perfect' trial, . . . he received a fair trial, free of prejudicial error.").

## IV. Conclusion

For the reasons above, this Court holds that the trial court (1) did not err by denying Defendant's motion to dismiss for failure to show a fiduciary relationship with the Temple but (2) did harmlessly err by overruling his objection to the State's introduction of evidence regarding his unrelated transactions with NYZ.

NO ERROR; HARMLESS ERROR.

Judges ZACHARY and CARPENTER concur.

Report per Rule 30(e).